RECEIVED
FEB 06 2018
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JOHN DOE,

    Plaintiff,

v.

PRINCETON UNIVERSITY,

    Defendant.

Civil Action No.: 17-cv-1614 (PGS)

OPINION

This matter is before the Court on a motion to dismiss for failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6) (ECF No. 18).

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 on the basis of Title IX of the Education Amendments of 1972.

I.

John Doe was a male graduate student at Princeton University ("University), studying to obtain a master's degree in finance. (Complaint, ECF No. 1, ¶¶ 21-22.) John Doe's relationship with the University was subject to the policies of the University which are set forth in a document entitled Rights, Rules, Responsibilities (the "RRR") (ECF No. 18-3). When a student is sexually assaulted by another student, as John Doe alleges, both Title IX of the Education Act of 1972 and the RRR have provisions regarding the victim's rights; and the RRR mandates that the University follow certain procedures to protect the victim. Plaintiff alleges that he is a victim and that the University failed to comply with its obligations to him under both Title IX and the RRR.

The University has adopted regulations in the RRR governing the conduct of faculty, administration, students and employees (hereinafter referred to as the "Community"). These regulations are sometimes general in nature, in that they require that members of the community

1

respect each other (R. 1.2.1); but in other instances the regulations are more specific with discrimination and harassment (R. 1.2.2). With respect to sex discrimination and sexual misconduct there is a more detailed policy and a procedure for managing complaints. (Section 1.3). The regulations provide that (1) a coordinator is responsible for overseeing all such complaints and policy initiatives (R. 1.3.1); (2) information received be kept confidential (1.3.5); (3) it defines prohibited contact including sexual misconduct (1.3.3.); (4) it outlines the procedures for filing a complaint (1.3.8), and conducting investigations (1.3.12) and appeals (1.3.12(3)).

John Doe is a citizen of Turkey and a graduate student. (Complaint, ¶37). His mother is Jewish, but he was not raised as an active practitioner of the Jewish faith, and he knew little of Judaism. (Id., ¶38.) As a student in the United States, he seized on the opportunity to connect with his Jewish heritage. (Id.) At the University, he became involved with the school's Jewish community and joined ▮. (Id., ¶¶38-40.) This campus connection to his Jewish heritage became an integral part of John Doe's life. (Id., ¶¶38-40.)

John Doe is a homosexual individual. However, he had never explored his sexuality, nor was he open to the community about his sexuality. (Id., ¶41.) While engaging with the University's Jewish community, he met "Student ▮." Student ▮ was a male undergraduate student who was a prominent member of the University's Jewish community. (Id., ¶39.)

Student ▮ was also a homosexual individual. (Id., ¶41.) The two students became close. (Id., ¶40.) At the end of the 2014 spring semester, Student ▮ expressed romantic feelings for John Doe, but John Doe stated that he did not share those feelings. (Id., ¶41.) Nevertheless, the two remained close and communicated electronically over the summer of 2014. (Id., ¶42.) John Doe eventually agreed to meet for a date with Student ▮ after he returned from Turkey to the United

States in August 2014. (*Id.*, at ¶ 43.) In early August, the two students began a relationship. (*Id.*, ¶ 44-46.)

Plaintiff alleges two sexual acts between him and Student ▮ which form the basis of his claims of sexual assault – one in August 2014 at Student ▮'s apartment in the Riverdale section of New York City, and the other in September 2014 at John Doe's apartment in Princeton, New Jersey. The graphic details of the sexual acts are set forth in the Complaint, but are not germane to the discussion herein. After the second incident, Plaintiff allegedly told Student ▮ that he did not wish to date him anymore; and subsequently informed certain mutual friends that Student ▮ had sexually assaulted him on two occasions. Thereafter, Plaintiff alleges that Student ▮'s friends created a hostile environment for him at the ▮▮▮, and also harassed him on campus by using a gay slur and calling him a liar. The pervasiveness of this alleged harassment is not discussed in the Complaint.

On October 21, 2014, John Doe allegedly contacted Assistant Dean of Resident Life and Student Affairs Lily Secora and told her that he had been sexually assaulted by Student ▮. (Complaint, ¶ 85). According to the Complaint, an investigation did not occur until November 21, 2014. (Id., ¶ 87).

On December 15, 2014, Regan Crotty, Title IX administrator of the University met with Student ▮ to discuss John Doe's allegations (Complaint, ¶ 88).

On January 14, 2015, an investigative panel was appointed. It included Crotty, John Master of Human Resources and Associate Dean Lisa Schreyer ("the Panel"). John Doe alleges that the Panel acted improperly in several ways. First, according to Plaintiff, the appointment of the Panel was delayed about two months (*Id.*, ¶ 87), and it had "no sense of urgency". Second, John Doe was not part of "an initial assessment meeting" (*Id.*, ¶ 91). Third, the Panel did not interview all of

John Doe's witnesses (*Id.*, ¶ 93). Fourth, the Panel disclosed to Student ▮ that John Doe suffered with testicular cancer which violated John Doe's right to privacy. Fifth, one Panel member questioned John Doe about his previous sexual activity which John Doe alleges was insensitive and violated Title IX (*Id.*, ¶100). Sixth, John Doe alleges that the Panel did not treat him with respect and concern. (*Id.*, ¶95.) Lastly, Plaintiff alleges that the University lacked impartiality by allowing Student ▮ to "bilaterally submit new evidence" (*Id.*, ¶¶ 118-121).

The Panel issued a set of charges against each student that would be investigated and determined. On February 20, 2015, Student ▮ was charged with sex discrimination, non-consensual sexual penetration, non-consensual sexual contact, sexual harassment, intimate relationship violence, stalking in the context of human relationships, and sexual exploitation. (*Id.*, ¶104). Plaintiff John Doe was charged with sexual harassment, stalking and retaliation (*Id.*, ¶167). After the investigation, the Panel determined that neither student was responsible for the complaints alleged.

In support of its motion to dismiss, the University submitted a copy of the Panel's report and findings, and a letter from Vice Provost Minter to John Doe[1]. The Report is a 17 page single-spaced document that thoroughly reviews the charges presented by both students. Student ▮ complained that John Doe was making false statements that Student ▮ had "raped" him. (Report pg. 1). In the Report, the Panel noted that it read nearly 500 pages of documents and conducted

---

[1] On a motion to dismiss, the Court may in some instances review materials outside of the pleadings without converting the motion to dismiss into a motion for summary judgment. A court is not limited to the four corners of the complaint and may consider "matters incorporated by reference integral to the claim, items subject to judicial notice, matters of public record, orders [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *See also Heine v. Dir. of Codes and Stds.*, 2017 U.S. Dist. LEXIS 146411, *15 (D.N.J. Sept. 11, 2017). The Court finds that the letter and report are undisputedly authentic documents upon which the Complaint's claims are based, thereby meeting the required criteria for consideration.

nineteen interviews of witnesses. (*Id.*). The Panel analyzed the credibility of both students and made detailed findings on each charge. The Panel found that neither student was responsible for sex discrimination or intimate violence.

John Doe appealed the Panel's decision to the appellate panel consisting of Dean Dolan, Dean Kulkarni, and Professor Bell. The Panel's decision was affirmed. (Complaint, ¶ 125).

The Complaint alleges many allegations in addition to those concerning the role of the Panel. For example, John Doe alleges that he advised the Panel that he was depressed and had been diagnosed with post-traumatic stress disorder (PSTD) and suffered with testicular cancer. (Complaint ¶¶ 92, 94). In March, 2015, he alleges he "advised two Rabbis at Princeton about his suicide attempts; and in April of that year he disclosed same to Princeton through "an internal ethics complaint site." (Complaint ¶¶ 103, 131-143). During the March-April time frame, Joe Doe was experiencing difficulty managing his course work. He sought to delay taking a midterm exam in an Options course so he could properly study. Associate Dean Schrayer denied this request but "repeatedly told John Doe to take a leave of absence" (*Id.*, ¶ 113-114). As a result, John Doe "was unable to successfully take his midterms", and because he did not sit for the Option midterm, he "received an "F" in that course. (*Id.*, ¶ 117) At the end of the term, he was dismissed from the University for failure to maintain adequate grades. (*Id.*, ¶ 146).

At the end of March 2015, the University "banned John Doe from attending ▮▮▮." This violated the University's "obligation" to provide reasonable interim measures. (*Id.* at ¶¶ 110-111).

II.

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.

5

*See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d. Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), *cert. denied*, *Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001). The pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d. Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citations and quotations omitted).

In applying that standard, the Court articulated a two-step process for evaluating the sufficiency of a complaint. First, the Court reviews each allegation in a complaint and exclude from consideration those allegations that are stated in a "conclusory" fashion. *Iqbal*, 556 U.S. at 680-81. Though the court must take all of the factual allegations as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Second, courts must conduct a plausibility analysis that assesses whether the non-conclusory facts that are left give rise to a plausible claim of relief. *Iqbal*, 556 at 681. 'Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown – "that the pleader is entitled to relief." *Id.* (citing Fed. Rule Civ. Proc. 8(a)(2).

Pursuant to the first step, the Court must weed out the conclusory statements. In this case, there are a substantial number of them. For example, John Doe contends (a) "there is an inherent and systemic gender bias against male students who are victims of sexual misconduct" (Complaint, ¶ 165); (b) the University has a "gender bias against male students with respect to allegations of sexual assualt" (*Id.*, ¶ 127); (c) "upon information and belief, Princeton does not believe male students can be victims of sexual assault" (*Id.*, ¶ 127); (d) the University was deliberately indifferent to John Doe's male gender (*Id.*, ¶ 176); and (e) he "would not have been subjected to Princeton's discriminatory acts if he were a female victim of sexual assault by a male assailant." (*Id.*, ¶ 174). There are no facts set forth in the Complaint to support these conclusions. In his brief (as opposed to the Complaint) Plaintiff relies upon a case filed by Wendy Murphy, and four other investigations pending before the Department of Education Office of Civil Rights to show the

University's indifference. However, John Doe does not explain the subject matter underlying each investigation, nor does he explain how these incidences relate to his allegations. As such, the facts are insufficient. The Court excludes these conclusory statements from its analysis.

### III.

The Complaint alleges four causes of action. The first cause of action is that the University violated Title IX of the Education Act of 1972; and the other causes of action are for selective enforcement, deliberate indifference, retaliation, breach of contract, estoppel and reliance, and lastly for negligence.

A. <u>Violation of Title IX of the Education Amendments of 1972</u>

Under Title IX, "no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any academic, extracurricular, research, occupational training, or other education program or activity operated by a recipient which receives Federal financial assistance." 34 C.F.R. § 106.31. It is undisputed that as a recipient of federal funding, the University is subject to the Title IX regulations. Plaintiff's Complaint focuses on the requirements under Title IX that the University "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited" under Title IX. 34 C.F.R. § 106.8(b). The statute requires that educational institutions have procedures and protocols to manage sexual harassment and discrimination cases.

"To establish a claim under Title IX, a plaintiff must show that (1) [he or] she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal financial assistance; and (3) that [his or] her exclusion was on the basis of her gender." *Tafuto v. N.J. Inst. of Tech.*, No. 10-4521, 2011 U.S.

Dist. LEXIS 81152, at *5 (D.N.J. 2011). In responding to peer-on-peer harassment, the Supreme Court held that a school "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648-49 (1999).

Over the years, there have been judicial decisions which recognized that a University may have acted unreasonably if the institution's response was based on selective enforcement, deliberate indifference, or retaliation. Each is discussed below.

i. <u>Selective Enforcement Theory</u>

Plaintiff alleges that there was a bias by the University against male sexual assault victims, which demonstrates that the University was selectively acting against homosexuals. As the Court found in *Tafuto*, "to support a claim of selective enforcement, [a male plaintiff] must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the [educational institution]." *Tafuto*, 2011 U.S. Dist. LEXIS 81152 at *6 (citing *Mallory v. Ohio Univ.*, 76 Fed. Appx. 634, 641 (6th Cir. 2003)). Additionally, a plaintiff must allege that "the [educational institution's] actions against [the male plaintiff] were motivated by his gender and that a similarly situated woman would not have been subjected to the same disciplinary proceedings." *Id.* (citing *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 757 (E.D. Tenn. 2009)). "[I]in asserting a Title IX claim the Complaint need only 'plead specific facts that support a *minimal* plausible inference of such discrimination" to survive a 12(b)(6) motion to dismiss as outlined in the *McConnell Douglas* framework." *Collick v. William Paterson Univ.*, 2016 U.S. Dist. LEXIS 160359 at *28 (citing Doe v. Columbia Univ., 831 F.3d 46, 56 (2nd Cir. 2016).

John Doe claims that the issuing of the charges by the Panel against him demonstrates selective enforcement because he alleges the University would be unlikely to "attempt to silence a female victim of sexual assault." As noted above, there are no facts showing that women are

treated preferably. Without supporting facts, John Doe's claim of selective enforcement fails to meet the *Twombly* standard.

ii.   Deliberate Indifference

Plaintiff alleges that the University acted in a deliberately indifferent manner in three different ways. First, Plaintiff alleges that the Dean's denial of his request to adjourn the time to take the Options midterm demonstrate that the University was deliberately indifferent to him. Second, the University's failure to provide psychiatric treatment after John Doe gave notice to the Rabbis and the internal ethics complaint website showed deliberate indifference. Lastly, the University's failure to curb the harassment by Student ▮'s friends showed deliberate indifference.

A recipient violates Title IX if "the recipient is deliberately indifferent" to known acts of student-on-student harassment in some cases. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 634 (1999). Plaintiff must show the University is "deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Tafuto v. N.J. Inst. of Tech.*, 2011 U.S. Dist. LEXIS 81152 at *9. The recipient school can only be liable for harassment when its "deliberate indifference 'subjects' its students to" actual harassment within the community. *Davis*, 526 U.S. at 645. Plaintiff has the burden of demonstrating the University's indifference when it's response is "clearly unreasonable in light of the known circumstances." *Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000).

In addition to case law, Plaintiff relies on the Department of Education's ("DOE") guidelines advisement which provides a standard for how the University should act in similar situations. The guideline states:

> [I]f, upon notice, the school fails to take prompt, effective action, the school's own inaction has permitted the student to be subjected to a hostile environment that denies or limits the student's opportunity to participate in or benefit from the school's program on the basis of sex. In this case, the school is responsible for taking effective corrective actions to stop the harassment, prevent its recurrence and remedy the effects on the victim that could reasonably have been prevented had it responded promptly and effectively.

(DOE Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties at 12). In applying that guideline to each of the three instances, the Court does not find that Plaintiff has plausibly shown that the University was deliberately indifferent.

With regard to the harassment claims by Student ▇'s friends, there are only vague allegations presented as to how pervasive the harassment was. There is no showing that the harassment by fellow students was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school" as required under *Tafuto*, 2011 U.S. Dist. Lexis 81152 at *9.

With regard to the Options midterm dispute, Plaintiff alleges that the Dean was deliberately indifferent because she did not adjourn his midterm exam. From a reading of the Complaint, it is unclear whether the adjournment request was due to alleged psychological trauma, or whether it was related to John Doe's preparation for the proceeding before the Panel; however, no matter the reason for his request, Plaintiff was provided with an alternative – to take a leave of absence from school for a period of time, rather than an adjournment of the Options midterm date. The fact that the Dean offered Plaintiff an alternative does not constitute deliberate indifference. In fact, a leave of absence is beneficial because it would have allowed a period of recuperation, and an opportunity

to return to school with the ability to pay full attention to successfully completing his graduate studies.

Lastly, John Doe contends that the University was deliberately indifferent by failing to provide psychiatric treatment after he gave notice to two Rabbis at the ▮, and notice to the ethics website of his suicidal ideation. Plaintiff cites to *T.B. v. New Kensington-Arnold Sch. Dist.*, 2016 WL 6879569 at *24 (W.D. Pa. Nov. 22, 2016), where the court held that because "Plaintiff became depressed, lost sleep, and wanted to miss school, a reasonable jury could have found that the events at issue had a concrete, negative affect on Plaintiff's access to education." Obviously, the outcome of the relationship with Student ▮ may have caused psychiatric issues for John Doe, but here the University gave John Doe a reasonable alternative; that is, a leave of absence. That fact distinguishes this case from *T.B. v. New Kensington-Arnold Sch. Dist.*, 2016 WL 6879569 (2016).

iii. <u>Retaliation</u>

John Doe claims that the University retaliated against him for reporting the sexual assaults to the University in two ways. First, the University took no interim action against Student ▮ or the friends of Student ▮ who allegedly had been harassing John Doe; and secondly, banning John Doe from ▮ events. (Doc. 32, page 24). "To state a claim for retaliation, a plaintiff must allege that (1) he engaged in a protected activity; (2) the funding recipient subjected him to an adverse action after or contemporaneously with the protected activity; and (3) a causal link existed between the protected activity and the adverse action." *Johnston v. Univ. of Pittsburgh of the Commonwealth*, 97 F. Supp. 3d 657, 683 (W.D. Pa. 2015). See also *Chatragadda v. Duquesne University*, 2016 WL 3633077 at *4 (W.d. Pa. 2016). To fulfill the requirements of the third prong, "Plaintiff must allege facts to demonstrate either: (1) an unusually suggestive temporal proximity between the

protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Johnston*, 99 F. Supp 3d at 683. *Cooper v. Menges*, 541 F. App'x 228, 232 (3d Cir. 2013).

Plaintiff meets prong one of the test, by reporting the alleged sexual assaults in October, 2014; but there are no facts supporting the second prong. To the contrary, the University conducted an investigation based upon the complaints of both Student ▮ and John Doe and rendered a decision. At the time of the decision (mid-March, 2015), Plaintiff sought an adjournment of his Options midterm; although the adjournment was denied, he was offered a leave of absence instead. There is no retaliatory animus shown by such an alternative offer by the University. The fact that he was banned from the ▮▮▮ (end of March 2015) is only vaguely alleged in the Complaint; and there are no allegations why this action was a product retaliation.

In the beginning of the section, it was noted that a school must respond to student-on-student harassment in a manner that is not clearly unreasonable. *Davis*, 526 U.S. at 648. In this case, the University acted with due diligence by thoroughly investigating the charges, and offering a leave of absence. As such, the complaint fails to state a claim under Title IX of the Education Act.

B.    Breach of Contract

Plaintiff's next cause of action is for breach of contract. Plaintiff alleges that the terms of the contract are set forth in the RRR and a breach of any term within the RRR constitutes a breach of contract. Plaintiff alleges that the University breached some terms of the RRR. These terms are very general and vague. The terms allegedly breached are:

> Princeton's policy on individual integrity requires that members of the Princeton community will "be honest and straightforward in their official deadlines with University processes, activities, and personnel."

13

> The purpose of the regulations is to protect the well-being of the Princeton community. See, Policy 1.1.1.
>
> Princeton agreed to allow its community members to live in a discrimination – and harassment free environment. See, Policy. 1.2.2. (Complaint ¶¶ 180-182)

As one can readily see, Plaintiff alleges that the University breached its covenant by (1) not being honest and straightforward; (2) by failing to protect the well-being of the University community; and (c) by failing to secure a harassment free environment. Such terms are illusory.

New Jersey courts have been reluctant to impose contract law upon the relationship between a student and in institute of higher learning. In one federal court case, the Court held that the rules of a university contain such a high level of generality that they do not constitute contract powers. *See Doe v. University of Chicago*, 2016 U.S. Dist. Lexis 184624 at *21 (N.D. Ill. Sept. 22, 2016). In another case concerning a University, the Court held to apply contract law between a student and a University is a slippery slope:

> Transcending that bare relationship is the understanding that the student will abide by the reasonable regulations, both academic and disciplinary, that the student will meet the academic standards established by the faculty and that the university, on the successful completion of studies, will award the degree sought to the student. Such a relationship, we submit, cannot be described either in pure contractual or associational terms. In those instances where courts have dealt with the relationship of a private university to its students in contractual terms, they have warned against a rigid application of the law of contracts to students' disciplinary proceedings.

*Napolitano v. Trustees of Princeton University*, 186 N.J. Super. 548, 565-66 (1982).

The Court furthered that deference should be given to the University "in dealing with academic failures, transgressions or problems of a student." *Id.* at 566-68. However, the Court "may intervene where the institution violates in some substantial way its rules and regulations pertaining

to student dismissals." *McMahon v. Salmond*, 573 F. Appx. 128, 132 (3d. Cir. 2014). The University has an obligation under the RRR's to conduct an investigation, to make factual findings, and if necessary to mete out a remedy. Here, the University did so.

Plaintiff further alleges that there was a breach of contract when the University "failed to hold Student ▇ accountable for the sexual assaults" and then there was a breach of "his contractual rights to a fair and impartial process" and "failed to protect John Doe from a hostile environment." To the contrary, the University followed its procedure as outlined in Rule 1.3.12 of the RRR by creating an investigative panel and appellate body on the alleged sexual assaults. (ECF No. 18-3). The fact that the University did not reach the conclusion Plaintiff desired is not a breach of contract especially since the University followed its procedures as outlined in the RRR. Here, to apply pure contract law to the terms asserted by Plaintiff makes no sense. The high level of generality of some terms of the RRR do not constitute contract powers. *See Doe v. University of Chicago*, 2016 U.S. Dist. Lexis 184624 at *21.

C.  <u>Estoppel and Reliance</u>

Plaintiff also relies on estoppel and reliance as a cause of action. This claim is based on the Plaintiff's acceptance of the offer of admission from Princeton University given Plaintiff's reliance on the fact that Princeton would not tolerate sexual assault by fellow students and would not deny Plaintiff his procedural rights if there was a violation of the RRR. (ECF No. 1, Compl. ¶ 30). Plaintiff argues that he relied on these promises to his detriment and therefore Princeton should be held liable based on the doctrine of estoppel. To state a claim for promissory estoppel in New Jersey, plaintiff must prove that "(1) there was 'a clear and definite promise'; (2) the promise was 'made with the expectation that the promise would be relied upon'; (3) 'the promise must reasonably rely on the promise,' and (4) 'the promise must incur a detriment in reliance thereon.'"

15

*Peck v. Imedia, Inc.*, 679 A.2d 745, 752 (N.J. Super. App. Div. 1996) (citations omitted). "Indefinite promises or promises subject to change by the promisor are not 'clear and definite' and cannot give rise to a claim for promissory estoppel." *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 574 (D.N.J. 2002) (citations omitted).

Here there is no clear and definite promise, and the Plaintiff relies on generalities. As such, Plaintiff cannot show a claim for promissory estoppel.

D.   <u>Negligence</u>

Plaintiff's last cause of action alleges negligence by Princeton University. Plaintiff argues that the University owed him a duty of care in the investigation of his allegations of sexual assault and in providing resources, guidance, and intervention regarding Doe's alleged suicide attempts. The University argues that the negligence claim is barred by the Charitable Immunity Act. The Act provides:

> No nonprofit corporation . . . organized exclusively for . . . educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation . . .

N.J. Ann. Stat. § 2A:53A-7. The Court in *Lax v. Princeton University*, 368 N.J. Super. 568 (2001), found the University to be devoted to educational purposes and therefore entitled to immunity under the Act. Plaintiff's Complaint recognized that he was benefiting from the educational program at University during the time of the Plaintiff's allegations. As such, the negligence claim fails.

## Conclusion

For all of the reasons stated above, the motion to dismiss the Complaint is granted. Plaintiff may amend the Complaint, if he deems it appropriate.

*[Signature]* 2/5/18